**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ABDULRAHMAN MOHAMMED
ABDULLAH AL-ERYANI,

       *Plaintiff*,

  v.

IMMIGRANT INVESTOR PROGRAM
OFFICE, *et al.*,

       *Defendants.*

No. 23-cv-1044 (DLF)

**<u>MEMORANDUM OPINION</u>**

Plaintiff Abdulrahman Mohammed Abdullah Al-Eryani filed this action against the United States Citizenship and Immigration Services and its components, challenging the Immigrant Investor Program Office's ("IPO") decision denying his Form I-526 application for an immigrant visa through the EB-5 Immigrant Investor Program.  Before the Court is Al-Eryani's Motion for Summary Judgment, Dkt. 11, and the defendants' Cross Motion for Summary Judgment, Dkt. 12. For the reasons that follow, the Court will grant the defendants' motion for summary judgment.

## I.    BACKGROUND

### A.    Statutory Background

The EB-5 program aims to promote foreign investment in the United States.  *See* 8 U.S.C. § 1153(b)(5)(A).  A foreign investor is eligible to apply for lawful permanent resident status if he invests capital into a commercial enterprise that helps the United States economy by creating at least ten full-time jobs in the United States.  *Id*.  To be classified as an EB-5 immigrant investor, the foreign investor must file an I-526 petition with the IPO.  *See* 8 C.F.R. § 204.6.  As part of that petition, he must demonstrate that he invested or plans on investing his

own capital "obtained through lawful means." *Id.* § 204.6(j)(3).  He can prove lawful means by submitting financial documents such as foreign business records, tax returns, or evidence of other legal capital sources.  *See id.* §§ 204.6(j)(3)(i)–(iv).

B.    **Factual Background**

Al-Eryani filed his I-526 immigrant investor petition on April 26, 2019.  Compl. ¶ 28, Dkt. 1.  He reported that the source of his capital was a gift from his father, the former Yemeni Ambassador to France ("Ambassador Al-Eryani"), among other countries.  *Id.* ¶¶ 30–32.  He submitted a declaration from Ambassador Al-Eryani explaining that he purchased a Paris apartment in 2000 while serving as ambassador to France.  *Id.*  ¶¶ 32–33.  The gift funds came from selling that apartment in 2016.  *Id.* ¶¶ 36–37; 2019 Decl. ¶ 5, Dkt. 1-3.  Ambassador Al-Eryani's declaration also explained that he had purchased the Paris apartment using funds from (1) his investment savings; and (2) proceeds from the sales of inherited properties.  2019 Decl. ¶ 3.

In April of 2021, the IPO issued a Request for Evidence, seeking evidence that Al-Eryani's invested capital was acquired through lawful means.  IPO Decision at 3, Dkt. 1-2.  Al-Eryani provided further documentation, including an updated declaration from his father, Compl. ¶ 42, translations of a Land Deed and Declaration of Land Inheritance, and a bank email confirming the bank no longer kept records of the funds Ambassador Al-Eryani used to purchase the Paris property,  Pl.'s Mot. for Summ. J. at 9–10, Dkt. 11-1.  This time, in Ambassador Al-Eryani's updated declaration, he said he purchased the Paris apartment using funds from his (1) salary income; (2) investments; and (3) sale of real property.  2021 Decl. ¶ 5, Dkt. 1-4.

The IPO denied Al-Eryani's visa petition.  *See* IPO Decision at 1.  After identifying and considering Al-Eryani's seventy-six pieces of evidence, it concluded that he had failed to present sufficient reliable evidence proving by a preponderance of the evidence that his capital investment

came from lawful sources. *Id.* at 18.   Specifically, the IPO found Ambassador Al-Eryani not credible because of the inconsistency in his funding sources for the Paris apartment: first pointing to investment savings and property sales and only later adding his salary income. *Id.* at 9; *compare* 2019 Decl. ¶ 3 *with* 2021 Decl. ¶ 5.  The IPO further found insufficient documentation establishing that any of the three funding sources—investment savings, property sales, or salary income—were actually used to purchase the Paris apartment. *See* IPO Decision at 9–15.

Al-Eryani appealed to the Administrative Appeals Office (AAO).  Compl. ¶ 76.  With his appeal he submitted further documentation, including a letter from the Embassy of Yemen detailing Ambassador Al-Eryani's salary, a personal statement attempting to reconcile inconsistencies, and full translations of the Land Deed and Declaration of Land Inheritance. *Id.* ¶¶ 77–79.  The AAO affirmed the IPO's decision and dismissed the appeal.  AAO Decision at 6, Dkt. 1-1.

Al-Eryani filed a complaint against the agency arguing that IPO and AAO acted arbitrarily and capriciously by (1) finding Ambassador Al-Eryani not credible, and (2) concluding the Land Deed and Declaration of Land Inheritance translations were only "partial translations."  Compl. ¶¶ 106–138.  Both parties filed cross motions for summary judgment.  Dkts. 11, 12.

## II.   LEGAL STANDARDS

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one with potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine"

if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

In an APA case, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006).  The Court will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C), or "unsupported by substantial evidence," *id.* § 706(2)(E).

In an arbitrary and capricious challenge, the core question is whether the agency's decision was "the product of reasoned decisionmaking."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 52 (1983); *see also Nat'l Telephone Co-op. Ass'n v. FCC*, 563 F.3d 536, 540 (D.C. Cir. 2009) ("The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained.").  The court's review is "fundamentally deferential—especially with respect to matters relating to an agency's areas of technical expertise."  *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012) (internal quotation marks and alteration omitted).  The court "is not to substitute its judgment for that of the agency."  *State Farm*, 463 U.S. at 43.  "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Id.* (internal quotation marks omitted).  When reviewing that explanation, the court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Id.* (internal quotation marks omitted).  For example, an agency action is arbitrary and capricious if the agency "entirely failed to consider an

important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or [the explanation] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* The party challenging an agency's action as arbitrary and capricious bears the burden of proof. *Pierce v. SEC*, 786 F.3d 1027, 1035 (D.C. Cir. 2015).

The arbitrary and capricious standard of § 706(2)(A) is a "catchall" that generally subsumes the "substantial evidence" standard of § 706(2)(E). *See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) ("When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense . . . ."); *accord Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007).

## III.   ANALYSIS

The core issue underlying this civil action is whether funds Ambassador Al-Eryani used to purchase a Paris apartment came from lawfully obtained sources. The United States Citizenship and Immigration Services concluded that Al-Eryani failed to meet his burden to prove that the funds were lawfully obtained. Al-Eryani argues that the agency acted arbitrarily and capriciously because (1) the IPO lacked a reasonable basis to find that Ambassador Al-Eryani lacked credibility and (2) the AAO failed to consider all relevant evidence. This Court addresses each argument in turn and concludes the agency's decisions was reasoned and supported by substantial evidence.

A.      **Adverse Credibility Finding**

The IPO made an adverse credibility finding as to Ambassador Al-Eryani based on the declarations the Ambassador submitted that explained how he obtained the funds to purchase the Paris apartment.  In his first declaration, the Ambassador identified his funds as coming from (1) investment savings; and (2) sale proceeds from inherited properties.  2019 Decl. ¶ 3.  In his second declaration, he listed (1) salary income; (2) investments; and (3) sales of real property.  2021 Decl. ¶ 5.  The IPO interpreted the Ambassador's second declaration as adding an income source that had not been listed before.  The IPO then determined this inconsistency was not overcome with objective evidence and found that it undermined the "reliability" and "sufficiency" of Al-Eryani's evidence.  IPO Decision at 9.  The AAO agreed, concluding that Al-Eryani failed to "sufficiently explain[] or reconcile[]" the inconsistency.  AAO Decision at 3.  The IPO and AAO's decisions were reasonable.  Although Al-Eryani asserted that "investment savings" encompassed both income savings and money from investments, the IPO and AAO were not obligated to accept his word for it.  Indeed, explanations to reconcile inconsistencies must be supported by objective evidence.  *See Matter of Ho*, 19 I. & N. Dec. 582, 591–92 (BIA 1988).  A personal statement from Al-Eryani does not qualify as such.  *Id.*  Nor does it matter that a separate portion of the Ambassador Al-Eryani's declaration mentioned his "substantial income" as ambassador.  *See* 2019 Decl. ¶ 2.  The first declaration still did not refer to his income when identifying the source of his funds.  On its face, Ambassador Al-Eryani appears to have changed his account regarding the source of his funds.  Although it might have been reasonable to interpret his two declarations as consistent, that does not render the IPO and AAO's alternative conclusion unreasonable, *see Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966), despite the additional evidence Al-Eryani later submitted in support of his petition.

In particular, Al-Eryani submitted a letter from the Yemeni Embassy confirming that Ambassador Al-Eryani made up to $20,000 per month for fourteen years.  Pl. Mot. for Summ. J. at 20; Embassy Letter, Dkt. 1-5.  But as the AAO noted, Al-Eryani failed to submit any statements demonstrating that his father's savings from that salary were enough to purchase the Paris apartment.  AAO Decision at 4.  The bank statement showing the money used to purchase the Paris apartment merely listed several deposits and then, that same day, a withdrawal of the purchase price.  IPO Decision at 11, *see also* JA 112–13, Dkt. 17.   But as the IPO observed, the "source(s) of these deposits" are unknown.  IPO Decision at 11.  It was not enough for Al-Eryani to raise the possibility that his father might have earned enough money from his salary to purchase the apartment.  *Matter of Ho*, 22 I. & N. Dec. 206, 210–11 (Assoc. Comm'r 1998).  He needed to show his father saved that money and then subsequently used it for the purchase.  Even so, Al-Eryani did not offer bank statements, tax documents, wire transfer records, or other types of evidence tracing the path of the ambassador's salary from payment to purchase.  8 C.F.R. § 204.6(j)(3); *Matter of Izummi*, 22 I. & N. Dec. 169, 195 (Assoc. Comm'r 1998).

The other two possible sources of income, investments and real property, fare no better. To provide documentation on Ambassador Al-Eryani's investment savings, Al-Eryani submitted a valuation of his father's investment portfolio.  IPO Decision at 12; JA 98–104.  But as the AAO observed, the record does not establish that money from that portfolio was used to purchase the Paris apartment.  AAO Decision at 4–5.  Nor is it clear from the record where the funds in the investment account came from.  IPO Decision at 12.  Finally, as discussed further below, no evidence on the record demonstrates that Ambassador Al-Eryani used money from sales of his inherited properties to buy the Paris apartment.  *See infra*, Section III.B.

In sum, the record supports the agency's determination that Al-Eryani did not present sufficient evidence establishing the Paris apartment was purchased using lawfully obtained funds. The IPO and AAO thoroughly reviewed the evidence that Al-Eryani offered, and they gave reasoned explanations for why the alleged funding sources—salary, investments, and real property sales—could not be traced to the funds that were used to purchase the Paris apartment. This Court will not disrupt this reasonable decision supported by the record.

**B.     Land Deed Translations**

Al-Eryani further argues the AAO acted arbitrarily and capriciously when it failed to consider the full translations of the Land Deed and Declaration of Land Inheritance. In his application, Al-Eryani submitted full translations of an 1881 Declaration of Land Inheritance and a 1943 Land Deed to support his claim that Ambassador Al-Eryani purchased the Paris apartment using proceeds from sales of inherited properties. Compl. ¶¶ 7–8. The AAO referred to those documents in its opinion as "partial translation[s]." AAO Decision, at 4. According to Al-Eryani, this means the AAO failed to consider all the relevant evidence. Pl. Mot. for Summary Judgment, at 22–23. Indeed, an agency acts arbitrarily and capriciously when it misapprehends the record and fails to consider "relevant factors." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).

But even assuming the AAO missed the full translation, any error is harmless because it did not affect the AAO's decision. *See* 5 U.S.C. § 706 (instructing courts to take "due account" of "the rule of prejudicial error"); *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). Those documents served to demonstrate that Ambassador Al-Eryani inherited wealth in the form of property. *See* 2021 Decl. ¶¶11–12 ("The lands I inherited were the seeds to my wealth."). Relying on the partial translation, the AAO credited Ambassador Al-Eryani's statement that he

inherited the land.  AAO Decision at 4.  Inheriting the land, however, was not enough.  The AAO concluded the petition still lacked evidence establishing how much money Ambassador Al-Eryani earned from those sales or that the money from those sales went towards purchasing the Paris apartment.  *Id.*  Al-Eryani provides no other sources tracing that money to the purchase of the apartment, nor does he explain how a full translation would have changed the AAO's decision. Because the result would have been the same even upon consideration of the fully translated document, any alleged error was harmless.

## CONCLUSION

For the foregoing reasons, this Court grants the defendants' motion for summary judgment. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 25, 2024